ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL CIRCUIT |
| COUNTY OF RICHLAND | |
| Courtney Young, | Civil Action No. 2020-CP-40- |
| Plaintiff, | **SUMMONS** |
| v. | |
| CSL Plasma, Inc., | |
| Defendant. | |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

**CROMER BABB PORTER & HICKS, LLC**

BY:    s/Shannon Polvi
          Shannon Polvi (#101837)
          1418 Laurel Street, Ste. A
          Post Office Box 11675
          Columbia, South Carolina 29211
          Phone: (803) 799-9530
          Fax: (803) 799-9533
*Attorney for Plaintiff*

June 23, 2020
Columbia, South Carolina

1

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

Courtney Young,

                Plaintiff,

v.

CSL Plasma, Inc.,

                Defendant.

IN THE COURT OF COMMON PLEAS
FIFTH JUDICIAL CIRCUIT

Civil Action No. 2020-CP-40-

**COMPLAINT**
**(Jury Trial Demanded)**

## EMPLOYMENT CASE

Plaintiff, by and through the undersigned counsel, complaining of the Defendant, respectfully alleges as follows:

## PARTIES & JURISDICTION

1. Plaintiff, Courtney Young (hereinafter "Plaintiff"), is a citizen and resident of Richland County, South Carolina.

2. Defendant, CSL Plasma, Inc. (hereinafter "Defendant"), is a blood and plasma donation center that maintains two donation centers in Richland County, South Carolina.

3. This action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, and the ADAAA amendments thereto, and the Common Law of South Carolina.

4. Charges have been filed with the appropriate federal and state agencies, the right-to-sue letter was issued, and this action is timely.

5. Jurisdiction and venue are within the judicial circuit because the parties have sufficient connections to this circuit, and the events giving rise to this action occurred in Richland County, South Carolina.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

**FACTUAL ALLEGATIONS**

6.      Plaintiff began working for CSL Plasma on January 10, 2018 as a Medical Staff Associate.

7.      Plaintiff was promoted to Medical Operations Supervisor on April 10, 2018.

8.      On March 21, 2019, Plaintiff was working at the 215 Assembly Street location when the Center Medical Director, Dr. Jennings, from the Decker Blvd. location, came to speak with Plaintiff. Both donation centers are located in Columbia, South Carolina.

9.      The purpose of Dr. Jennings' conversation with Plaintiff was to inform her that she was a "cohabitant" of one of their donors who had received an unsuitable test result.

10.     Dr. Jennings informed Plaintiff that the donor was her husband and he named the specific disease for which Plaintiff's husband purportedly tested positive.

11.     Plaintiff was shocked by the news and was unclear as to why Dr. Jennings was giving Plaintiff her husband's test results.

12.     Dr. Jennings proceeded to tell Plaintiff that Victoria McIntyre, the Associate Director of Operations and Quality (hereinafter "McIntyre"), had called him on his personal cell phone and asked him to speak with Plaintiff. The purpose of doing so was to "keep it from being discussed by others."

13.     It became known to Plaintiff that her husband's test results, and vicariously her own purported positive results, had been circulated to the persons physically in the CSL Plasma location at 215 Assembly Street and at the 2768 Decker Blvd Suite 300A location on March 21, 2019.

14.     Temel Dickerson, a medical staff associate at the CSL Decker Blvd location where Plaintiff's husband was a donor, overheard public gossip about Plaintiff's husband's protected health information and false accusations that he had a venereal disease.

15.     Temel Dickerson reported those conversations to Monique Simpson.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

16.    Monique Simpson then shared those statements with Nevel Bain.

17.    Nevel Bain reached out to McIntyre about such statements.

18.    The false information was further disseminated to Brando Butler, the Assistant Center Manager at the Columbia CSL Plasma Center where Plaintiff worked.

19.    The false information was further shared with Monica McKinley and Shereka Slater, two reception techs at the center.

20.    Jamie Garlinger was also made aware of the false information.

21.    Plaintiff found out that all those people, and possibly also others, knew that her husband, and thereby also herself, were being accused of having a venereal disease.

22.    Plaintiff was highly distressed not only by the news itself, but by such personal information being inappropriately exposed to others within two CSL Plasma workplaces.

23.    Plaintiff informed her husband of the information; however, she learned that he had not yet been notified of any results. Her husband was very upset. Plaintiff's husband had not even been informed of any purported positive test results to a venereal disease when such information was already disseminated through two CSL Plasma locations and to numerous people in both locations in Columbia, South Carolina.

24.    Plaintiff recommended that her husband go to the Veterans Hospital, where he receives his medical care, and get tested.

25.    On April 25, 2019, Plaintiff reported to work, and there were a few construction issues that required a manager; however, no manager had shown up the night before. Therefore, it made troublesome to open that morning.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

26.     Since Plaintiff was a supervisor, and not a manager, Plaintiff contacted her Center Manager, Garrett West (hereinafter "West"), and told him a manager was needed. West arrived shortly thereafter.

27.     Upon his arrival, West summoned Plaintiff into his office and told Plaintiff that they needed to speak with McIntyre. Plaintiff was unsure why this was necessary, but she agreed.

28.     McIntyre and West asked Plaintiff to document, in writing, every occurrence where the current Assistant Manager was not doing her assigned job and each time where Plaintiff had to pick up excess management slack, outside of her job description, to cover for the failures of the Assistant Manager. They recognized that Plaintiff was essentially performing the duties of the Assistant Manager and that she was doing a good job for CSL Plasma by doing so.

29.     Plaintiff asked about her recent application for the open Assistant Manager position that McIntyre had asked Plaintiff to apply for on March 1, 2019. In response, Plaintiff was told that they planned to give it to another employee, but if Plaintiff helped them regarding the matter with the current Assistant Manager, that she could be moved into a management role very soon. Plaintiff was upset by this request to discuss other employees in such a context, with the implication that Plaintiff essentially had to stab someone else in the back to succeed at CSL Plasma, such conduct went against Plaintiff's morals. Plaintiff was also told multiple times that there will be changes that would open roles for her at both centers in Columbia, South Carolina. However, McIntyre had recommended Plaintiff to apply and McIntyre's support only seemed to shift after there was a perception that Plaintiff had a venereal disease.

30.     Plaintiff had been working on the interview team, as she had been covering for management for months while she was waiting to be interviewed, so it was strange she was no longer being considered for the position unless she helped them with the issue.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

31.    Plaintiff asked McIntyre why she was not being interviewed, but McIntyre stated she had nothing to do with the process and that she needed to ask West.

32.    Plaintiff had previously asked West, and West told Plaintiff that McIntyre had specifically instructed him not to interview Plaintiff. West and McIntyre's statements were in direct conflict with one another.

33.    Plaintiff expressed her concern about the inconsistent statements, but McIntyre became defensive and denied West's claims.

34.    McIntyre then changed her wording and attempted to backpedal out of her statements.

35.    Plaintiff was concerned she was being passed over for the position due to her husband's test results. McIntyre stated she was unaware of Plaintiff's husband's test results. Once Plaintiff stated that Dr. Jennings disclosed McIntyre's instructions to give Plaintiff the results, McIntyre's story changed again.

36.    As a result, Plaintiff began to suffer from extreme distress. Plaintiff excused herself, to avoid any further problems, and went back to work. Plaintiff was the only medical staff at the time.

37.    While Plaintiff was working, West approached Plaintiff again, with McIntyre on the phone, and asked her to return to his office.

38.    Plaintiff was apologized to and then asked to cooperate and be patient. This greatly upset Plaintiff, so she informed them that once another medical staff member arrived, she was going home. Her stress was overwhelming at that point. Plaintiff sat in her car for a bit to calm down, as she was suffering from physical shaking and stomach pains.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

39.     Plaintiff relayed to West that she did not want to be treated so unprofessionally. Once another medical staff member arrived, Plaintiff left work.

40.     Plaintiff called McIntyre in the car, and McIntyre asked her not to make any decisions while she was upset. McIntyre also stated that West wanted Plaintiff to take any time needed to decompress.

41.     Plaintiff went home and contacted HR to take the needed time off.

42.     Plaintiff's stress, as a result of the events described above, has resulted in numerous medical visits and the diagnoses of situational disorder with associated anxiety and depression. Her symptoms include insomnia, gastrointestinal distress, frequent headaches, loss of appetite, lack of concentration, panic attacks, mood swings, hand tremors, excessive nervousness, and elevated blood pressure.

43.     Plaintiff has been prescribed medication to help with the symptoms, as well as regularly seeing a counselor to help with the depression.

44.     Plaintiff's husband suffers from PTSD, depression, and an inability to focus due to the events.

45.     Both Plaintiff and her husband have missed work and been extremely depressed due to these events. The conduct of CSL Plasma's representatives have drastically changed Plaintiff's marriage; Plaintiff and her husband attend counseling as a couple.

46.     Plaintiff was concerned that if she said anything about how poorly this situation was dealt that she would lose her job.

47.     Plaintiff performed her job in a competent, if not more than competent manner, during her employment with Defendant. In fact, Plaintiff was promoted in less than 90 days of her employment with Defendant to her position of supervisor, as well as having no attendance issues.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

48.     At the time, Plaintiff was denied Short Term Disability by her employer, and a letter was sent to her instructing her to contact human resources no later than May 31, 2019 or it would be assumed she remained unable to return to work so they would accept her voluntary resignation.

49.     Plaintiff was off work from April 25, 2019 due to her health condition.

50.     Plaintiff called West on April 26, 2019 around 11:19am and left him a message to discuss her time off. He never returned her call.

51.     Plaintiff applied for short-term disability benefits.

52.     Plaintiff's short-term disability claim was approved on July 9, 2019 and it was authorized for the date range of April 26, 2019 through August 31, 2019.

53.     The approval for Plaintiff's short-term disability claim was extended through October 24, 2019.

54.     On October 24, 2019, Plaintiff's request for an extension for short-term disability was denied even though Plaintiff's medical care provider found that Plaintiff was not medically ready to return to work.

55.     Plaintiff spoke with Jamie Garlinger, the Assistant Center Manger, who asked Plaintiff if she needed more leave time out and Plaintiff told her what her medical care provider said. Garlinger told Plaintiff that she would speak to the Center Manager on Plaintiff's behalf and let the Human Resources Department know about Plaintiff's leave accommodation request. Garlinger said that Defendant would not be able to pay Plaintiff for such leave, but as long as the position was still open, Plaintiff could return to work when she was cleared by her medical care provider to do so.

56.     Plaintiff received a termination letter stating that her employment would be terminated on October 31, 2019.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

57.     Plaintiff filed her Charge of Discrimination with the EEOC on November 19, 2019

and has received her Notice of Right to Sue prior to filing suit.

## FOR A FIRST CAUSE OF ACTION
### (Disability Discrimination – ADA and amendments thereto)

58.     Plaintiff realleges the foregoing where not inconsistent herewith.

59.     Plaintiff is disabled with situational anxiety disorder with associated depression,

and Defendant knew of her disability.

60.     Plaintiff is, and at all times relevant hereto was, qualified to do the job she was

hired for with or without reasonable accommodation.

61.     Plaintiff performed her position of Medical Operations Supervisor exceptionally

and even took on the responsibilities of the manager when the manager was absent.

62.     Plaintiff is, and at all times relevant hereto was, qualified for the management

promotion.

63.     Defendant unlawfully failed to promote Plaintiff to the Assistant Manager position

after Defendant was on notice of disabilities and perceived disabilities from which Plaintiff

suffered.

64.     Plaintiff sought reasonable accommodations, leave time, in the times relevant to

this action and Defendants failed to engage in a legitimate interactive process, and at times,

deliberately caused hardship on Plaintiff causing her disability to worsen.

65.     Plaintiff was forced to take leave time as a result of not being able to endure the

undue burden that her workplace stress had placed upon her.

66.     Plaintiff was unlawfully terminated on October 31, 2019.

67.     Such conduct by Defendant constitutes disability discrimination in violation of the

ADA.

9

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

68.     For the conduct alleged herein, Defendant has directly and proximately caused and is liable for all damages resulting from the failure to promote, failure to accommodate, and unlawful termination: back pay, front pay, back benefits, front benefits, diminished earning capacity, pain and suffering, embarrassment, shock, humiliation, mental suffering, physical damages, and emotional distress. Plaintiff is also entitled attorney's fees in accord with federal laws and costs, and Plaintiff is entitled to injunctive relief including reinstatement to her job with reasonable accommodations. Plaintiff last requests and is due pre-judgment interest on all damages recovered and an offset for the lump sum wage award.

69.     Defendant's actions as set forth above were undertaken willfully, wantonly, knowingly, intentionally, and recklessly and with utter disregard for the federally protected rights of Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from Defendant.

### FOR A SECOND CAUSE OF ACTION
**(Retaliation in Violation of the ADA and amendments thereto)**

70.     Plaintiff realleges the foregoing where not inconsistent herewith.

71.     As alleged above, Plaintiff openly opposed discrimination when she contacted management and human resources regarding her physical and emotional health, and when she requested an accommodation, specifically the necessary time off needed for her disabilities.

72.     Those contacts by Plaintiff with Defendant were made in good faith and constitute protected activity under the ADA.

73.     In retaliation for Plaintiff's request for accommodation and contacts with management and human resources, Defendant refused to interview Plaintiff for the Assistant Manager position, denied Plaintiff's request for leave time for her disability, and unlawfully terminated Plaintiff on October 31, 2019.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

74.     As a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, and has suffered psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, physical injuries, character and reputation, and further seeks attorney's fees and costs, and prejudgment interest and an offset for the lump sum wage award.

75.     Defendant's actions as set forth above were undertaken willfully, wantonly, knowingly, intentionally, and recklessly and with utter disregard for the federally protected rights of Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from Defendant.

## FOR A THIRD CAUSE OF ACTION
### (Defamation)

76.     Plaintiff realleges the foregoing where not inconsistent herewith.

77.     Defendant by word and by act, through Defendant employees and administrative personnel, has published to third parties the protected medical information of Plaintiff's husband, thus leading to gossip and speculation in Plaintiff's workplace that Plaintiff and her husband have a venereal disease.

78.     The statements have a defamatory meaning in South Carolina and are false because subsequent testing of Plaintiff and her husband proved that neither had that communicable disease.

79.     Defendant's employees made it clear to other employees of Defendant, outside of the need to know basis, that Plaintiff's husband tested positive for a disease that would disqualify him from being a plasma donor. Likewise, that Plaintiff would be positive for the same disease. This falsely accused Plaintiff of having a venereal disease and made Plaintiff appear to be unfit for her profession, as they speculated, she had contracted it.

80.     Plaintiff lost her opportunity to interview for the management position, as well as causing her a great deal of stress and anxiety.

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

81.     After Plaintiff's husband's protected health information was shared due to the speculation of a positive venereal disease test, Defendant took actions to avoid interviewing Plaintiff for the position by explicitly telling West not to interview Plaintiff.

82.     Defendant's conduct as alleged here constitutes actionable *per se* defamation for which the Defendants are liable.

83.     Plaintiff has suffered damages as a direct and proximate result of the defamation alleged here including: reputational loss, marital disruption, loss to professional standing, embarrassment, pain and suffering, stress and anxiety, and diminished earning capacity. Plaintiff is entitled to the attorney fees and costs of this claim. Plaintiff further seeks and is entitled to pre-judgment interest on all damages alleged.

84.     Defendant acted defamed Plaintiff with actual malice, and she is entitled to punitive damages.

## FOR A FOURTH CAUSE OF ACTION
### (Loss of Consortium)

85.     Plaintiff realleges the foregoing where not inconsistent herewith.

86.     Plaintiff is married.

87.     Plaintiff's husband was tortuously harmed by Defendant.

88.     Defendant defamed Plaintiff's husband by falsely accusing him of having a venereal disease and publishing such defamation as described above.

89.     Defendant violated Plaintiff's husband's privacy rights by disclosing private information that is offensive to a reasonable person in South Carolina.

90.     Defendant is liable to Plaintiff's husband for the harms of defamation and violations of his privacy rights related to the disclosures about his medical status and purportedly testing

ELECTRONICALLY FILED - 2020 Jun 23 9:46 AM - RICHLAND - COMMON PLEAS - CASE#2020CP4002871

positive for a venereal disease. Such liability sources from the events described above on March 21, 2019.

91.    As a result of Defendant's defamation and violations of her husband's privacy rights, Plaintiff suffered damage. Plaintiff has missed work and been extremely depressed due to these events. The conduct of CSL Plasma's representatives have drastically changed Plaintiff's marriage. Plaintiff and her husband attend counseling as a couple. Plaintiff has suffered a loss of spousal services and companionship because of Defendant's defamation and violations of her husband's privacy rights. Plaintiff is entitled to compensatory damages, attorney's fees, costs, and punitive damages for this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for all actual, compensatory, and legally presumed damages in an amount to be determined by a jury. Plaintiff requests an award of punitive damages from Defendant for the willful and wanton treatment afforded her. Plaintiff also prays for pre-judgment interest, tax offset of a lump sum award, attorney's fees and costs of this action, and any other and further relief as this Court may deem just and proper from Defendant.

**CROMER BABB PORTER & HICKS, LLC**

BY:    s/Shannon Polvi
Shannon Polvi (#101837)
1418 Laurel Street, Ste. A
Post Office Box 11675
Columbia, South Carolina 29211
Phone: (803) 799-9530
Fax: (803) 799-9533
*Attorney for Plaintiff*

June 23, 2020
Columbia, South Carolina