IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Courtney Young,<br><br>              Plaintiff,<br><br>v.<br><br>CSL Plasma, Inc.,<br><br>              Defendant. | C/A No. 3:20-cv-02720-SAL<br><br><br>**OPINION AND ORDER** |

    This matter is before the court for review of the August 16, 2021 Report and Recommendation of United States Magistrate Judge Paige J. Gossett (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 42.] In the Report, the Magistrate Judge recommends that the court grant Defendant's motion for summary judgment, ECF No. 28, as to Plaintiff's ADA claims and decline to exercise supplemental jurisdiction over Plaintiff's state claims. For the reasons outlined herein, the court adopts the Report in its entirety.

## BACKGROUND

    This action was brought by Plaintiff against her former employer, CSL Plasma, Inc. ("Defendant"). Plaintiff asserts claims under the Americans with Disabilities Act ("ADA") for disability discrimination and retaliation. The claims stem from Plaintiff's termination following the exhaustion of her short-term disability leave for situational anxiety and associated depression (lasting from April 26, 2019 to October 24, 2019.) Plaintiff also asserts a state law defamation claim and seeks damages for loss of consortium related to the alleged disclosure of her husband's private information. The specific facts are fully set forth in the Report, and this court will not repeat them here.

1

On June 18, 2021, Defendant moved for summary judgment on all claims, ECF No. 28, and Plaintiff filed a response in opposition, ECF No. 37. Thereafter, the Magistrate Judge issued her Report. [ECF No. 42.] Plaintiff filed her objections to the Report, ECF No. 46, Defendant replied, ECF No. 48, and the matter is now ripe for review by this court.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report, this court is not required to provide an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 n.6 (D.S.C. 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

2

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for clear error." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

Plaintiff objects to the Report's recommended dismissal of her ADA claims, arguing the Report erroneously found that (1) Plaintiff was not a "qualified individual" within the meaning of the ADA and (2) Plaintiff did not meet her burden of proving that Defendant's non-retaliatory reason for her termination was pre-textual. The court addresses Plaintiff's objections below.

### I. Plaintiff was not a "qualified individual" under the ADA.

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as one "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The plaintiff bringing the ADA claim bears the burden of demonstrating that she is in fact a "qualified individual." *Jessup v. Barnes Grp., Inc.*, No. 20-1801, 2022 WL 164016, at *3 (4th Cir. Jan. 19, 2022). To prove her qualification, the plaintiff must produce evidence that: (1) she could perform the essential functions of the job or (2) if she could not, that a reasonable accommodation by her employer would enable her to perform those functions. *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 56 (4th Cir. 2002). At issue in this action is (2) whether a reasonable accommodation would have enabled

3

Plaintiff to perform her job.

The Report recommended dismissal of Plaintiff's ADA claims on the basis that a reasonable jury could not conclude that Plaintiff was a "qualified individual" because she failed to forecast evidence that an accommodation of additional leave would have enabled her to perform the essential functions of her job after the leave ended. *See* [ECF No. 43 at 7–10.] Plaintiff argues that a brief period of additional leave at the end of October 2019 would have been sufficient for her to resolve her symptoms so that she could return to work and perform the essential functions of her job. *See* [ECF No. 46 at 2–5]. In support, Plaintiff references a conversation she had with Jamie Garlinger ("Garlinger"), an assistant center manager employed by Defendant, in late October 2019. *Id.* at 2–3. In that conversation, Plaintiff alleges that she informed Garlinger that she was still working with her doctor to determine when she could return to work, that she had an upcoming doctor's appointment, and her "doctor would be in contact with the disability company." *Id.* at 3. Plaintiff claims that this conversation provides evidence that "an extension of medical leave as a reasonable accommodation, at minimum until her already scheduled doctor's appointment, would have permitted Plaintiff to perform the essential functions of her job." *Id.* at 4. The court disagrees.

At the time of the Garlinger conversation, Plaintiff had already been on leave for six months and could not identify *when* she expected to be able to return to work. Furthermore, Plaintiff admitted that "[she] was still having a lot of symptoms at that time" and communicated her symptoms to Garlinger. *See* [Pl. Dep. Tr., ECF No. 28-3 at 40 ("I was having trouble sleeping. I was having trouble eating. I was still having a lot of anxiety attacks, and that was new.")] Nor did the conversation indicate that an extension of leave "at minimum until her already scheduled doctor's appointment" would enable Plaintiff to work through her ongoing symptoms and return

4

to work after the appointment. The conversation with Garlinger, therefore, failed to evidence that an accommodation of brief, additional leave at the end of October 2019, would have permitted her to return to work and perform the essential functions of her position after the leave ended. *See Lamb*, 33 F. App'x at 57 ("A plaintiff may not prevail by demonstrating that he might have been able to perform the essential functions of the job at some time in the future. A plaintiff must show that he can perform the essential functions of the job at the time of the employment decision or in the immediate future." (citing *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995))).

Outside of the Garlinger conversation, Plaintiff offers only that her "return to work" at a new job, with a new employer, in November 2019 proves that she could have performed the essential functions of her position at CSL Plasma, Inc. had she been given a few more weeks of medical leave. [ECF No. 46 at 4–5.] However, Defendant points out that this argument "omits the fact that [Plaintiff] resigned from the job she accepted in November 2019 during the onboarding process because it triggered symptoms of her disability." [ECF No. 48 at 3 (citing Pl. Dep. Tr., ECF No. 28-3 at 196–97, 210).] The court agrees that Plaintiff's inability to complete the onboarding process of a new job in November 2019 due to her disability undermines her argument, indicating that an extension of leave at the end of October 2019 would *not* have enabled her to return to work at CSL Plasma, Inc. in November 2019 and perform the essential functions of her position. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013) ("The employee must show that had he been granted leave, at the point at which he would have returned from leave, he could have performed the essential functions of his job.").

Plaintiff has not met her burden of demonstrating that she was a "qualified individual" who could perform the essential functions of her job with or without an accommodation of extra leave. The court, therefore, overrules Plaintiff's objection and adopts the Report's recommendation to

grant Defendants' motion for summary judgment on Plaintiff's ADA claims regarding the failure to accommodate, failure to promote, and discriminatory discharge.[1]

## II. Plaintiff failed to produce evidence that Defendant's reason for terminating her was pretextual.

Regarding Plaintiff's claim for retaliation under the ADA, the Report found that Plaintiff failed to produce evidence that Defendant's proffered reason for terminating her—her inability to return to work after exhausting her leave—was pretextual. [ECF No. 42 at 11.] Plaintiff objects to the Report's finding, arguing that "Defendant's reason for Plaintiff's termination was pretextual because had Plaintiff been given more time to resolve her symptoms, she would have been able to return to work." [ECF No. 46 at 5.] Again, for the reasons discussed above and in the Report, Plaintiff has *not* demonstrated she would have been able to resolve her symptoms and return to work with additional leave. Plaintiff, therefore, has failed to demonstrate that Defendant's stated reason for her termination was illegitimate or pretext for her request for disability leave.

The record reveals that Plaintiff failed to contact human resources before her leave expired to discuss accommodations that would allow her to return to work, in accordance with Defendant's October 22, 2019 letter instructing her to do so. *See* [ECF Nos. 42 at 4, 11; 28-25.] Nor has Plaintiff "pointed to any evidence in the record that she ever determined what accommodations would allow her to return to work or that she communicated such a resolution to CSL." [ECF No. 42 at 11.] The court is unpersuaded that Plaintiff's conversation with her supervisor, Garlinger, or any other employee without authority to grant accommodations, was sufficient to communicate to human resources a request for an accommodation of additional leave. More importantly, Plaintiff failed to communicate to Defendant or anyone else that such an accommodation would

---

[1] As a result, the court need not address Plaintiff's argument that her employer refused to make her requested accommodation. *See* [ECF No. 46 at 4.]

6

allow her to alleviate her symptoms so that she could return to work.

Plaintiff also argues that evidence that her position was not filled when she left the company supports her pretext argument because "Defendant could have continued to accommodate Plaintiff" by allowing her to continue her leave. [ECF No. 46 at 4.] Defendant, however, was not required to accommodate Plaintiff with an indefinite leave of absence. *See McNeil v. Scotland Cnty.*, 213 F. Supp. 2d 559, 570 (M.D.N.C.) ("[A]n indefinite leave of absence is not an accommodation required by the ADA."), *aff'd*, 53 F. App'x 242 (4th Cir. 2002); *Myers*, 50 F.3d at 283 ("[R]easonable accommodation does not require [the employer] to wait indefinitely for [the employee's] medical conditions to be corrected . . . ."). Furthermore, the record reveals that when Plaintiff was terminated pursuant to Defendant's short-term disability policy, she was unable to return to work, had already exhausted her short-term disability coverage, and had not filed for long-term disability. *See* [ECF Nos. 28-25; 42 at 3–4.]

In sum, Plaintiff has failed to forecast any evidence that Defendant's proffered reason for terminating her was pretextual. The court, therefore, overrules Plaintiff's objection and adopts the Report's recommendation to grant Defendant's motion for summary judgment as to Plaintiff's ADA retaliation claim.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report. After a *de novo* review of each part of the Report to which Petitioner specifically objected, the Court adopts the Report, ECF No. 42, and incorporates it herein. As a result, Defendants' motion for summary judgment, ECF No. 28, is **GRANTED** as to Plaintiff's ADA Claims. The court **DECLINES** to exercise supplemental jurisdiction on Plaintiff's state claims for defamation and loss of consortium pursuant to 28 U.S.C. § 1367(c), and

the claims are **REMANDED** to the Richland County Court of Common Pleas.

**IT IS SO ORDERED.**

January 28, 2022
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge